IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA

Charlottesville Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 3:23-cr-11 |
| v. ) | |
| ) | |
| JAMES METCALF, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S POSITION ON SENTENCING

Defendant James Metcalf, by and through counsel, hereby submits this memorandum in aid of sentencing.

## INTRODUCTION

Mr. Metcalf bribed former Culpeper County Sheriff Scott Jenkins in exchange for appointment as an auxiliary deputy sheriff. He recognizes the serious nature of the offense he has committed and accepts complete responsibility for his actions. Mr. Metcalf has been devoted to making amends for his actions by owning up to what he did, pleading guilty and cooperating with the government, including making himself available for multiple extensive interviews and testifying at trial.

Mr. Metcalf is genuinely remorseful for misconduct. He respectfully requests that the Court take into account the nature of the offense as well as his demonstrated contrition, background, character, and extensive cooperation in imposing a sentence of probation.

## BACKGROUND

Mr. Metcalf's Family and Career

As noted in the presentence report ("PSR"), Mr. Metcalf has lived in the Washington, DC area all his life, including, for the last 37 years, with his wife in Manassas, Virginia. PSR ¶ 45. His tight-knit extended family lives nearby. Mr. Metcalf's mother, father, and two sisters live in Fairfax, Virginia. *Id.* ¶ 43. His four adult children, their spouses, and his grandchildren also live in metropolitan Washington. *Id.* ¶ 44.

Even before his graduation from George Mason University in 1991[1], Mr. Metcalf began his career as a self-employed entrepreneur, establishing and operating several companies, including a cyber security and IT systems design business and a real estate appraisal firm. *Id.* ¶¶ 50-52. Currently, he maintains active real estate appraisal and real estate sales licenses. *Id.* ¶ 52.

At the same time, Mr. Metcalf has spent a great deal of time and energy working as an unpaid law enforcement officer. Beginning in 1993 and up to 2017, he has served as an auxiliary police officer, a reserve police officer, and a reserve deputy sheriff in Arlington, Prince William, and Spotsylvania counties and in the towns of Dumfries and Quantico. *Id.* ¶ 21. Mr. Metcalf successfully completed all of the required training for those positions. He received several promotions and multiple commendations for his service. Exhibit ("Ex.") 1 (letters of commendation).

Offense Conduct and Cooperation

In August 2022, Kevin Rychlik, a friend Mr. Metcalf had met in 1995 when they both served as reserve deputy sheriffs in Prince William County, offered to facilitate Mr. Metcalf's appointment as an auxiliary deputy sheriff in Culpeper County in return for a $5,000 contribution

---

[1] Mr. Metcalf attended the University of Maryland before transferring to George Mason.

2

to then-Sheriff Scott Jenkins's reelection campaign. Eager to return to law enforcement, Mr. Metcalf agreed to the arrangement. *Id.* ¶ 9.

On September 7, 2022, following lunch with Jenkins and Rychlik, Mr. Metcalf gave Jenkins a $5,000 check drawn on his company's bank account and payable to "Scott Jenkins for Sheriff." *Id.* ¶ 10. Afterwards, Mr. Metcalf, along with Rychlik, drove to the Culpeper County Circuit Court Clerk's Office to take the oath of office and then to the Sheriff's Office, where Jenkins gave him a deputy sheriff's badge. *Id.* ¶¶ 10-11. Thereafter, in September and October 2022, Mr. Metcalf recruited, or tried to recruit, six others to become auxiliary deputy sheriffs in exchange for bribes in the form of contributions to the Jenkins campaign. *Id.* ¶¶ 11-12. He did so at Rychlik's request.

### POSITION ON PRESENTENCE REPORT AND CALCULATED GUIDELINES

On June 28, 2023, the grand jury returned an indictment charging Mr. Metcalf with one count of conspiracy in violation of 18 U.S.C. § 371, one count of honest services wire fraud in violation of 18 U.S.C. §§ 1343 & 1346, and one count of bribery concerning programs receiving federal funds in violation of 18 U.S.C. § 666(a)(2). Dkt. No. 3. On March 1, 2024, pursuant to a written plea agreement, Mr. Metcalf pled guilty to the federal program bribery count. Dkt. No. 101. Under the terms of the plea agreement (Dkt. No. 90), the government and Mr. Metcalf agreed to recommend the application of the following United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions:

- a base offense level of 12 pursuant to U.S.S.G. § 2C1.1(a)(2) and
- a six-level increase for an offense that involved an elected public official pursuant to U.S.S.G. § 2C1.1(b)(3).

The plea agreement also provides that if Mr. Metcalf complies with his obligations thereunder and accepts responsibility for his conduct, the government will recommend that the

3

Court grant a two-level reduction in his offense level pursuant to U.S.S.G. § 3E1.1(a) and, if applicable, at sentencing, will move for an additional one-level reduction in his offense level for timely acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b).  In addition, as noted in the PSR, Mr. Metcalf meets the criteria for a two-level, zero-point offender reduction under U.S.S.G. § 4C1.1(a).

Thus, a Guidelines calculation consistent with the recommendations and agreements contained in the plea agreement results in a total offense level of 13, with a corresponding advisory range of 12 to 18 months in prison.

## SENTENCING ARGUMENT

Mr. Metcalf fully recognizes the gravity of his offenses.  He is genuinely remorseful for the infringement on Culpeper County residents' right to the honest services of the individual elected to serve as their sheriff and the damage his conduct has done to the public's confidence in the integrity of government.

Mr. Metcalf is a first-time offender with a long history of making positive contributions to his family and his community.  As the record before the Court makes clear, the offense conduct was entirely out of character for Mr. Metcalf, a fact the Court should take into account in crafting a just sentence.  *See United States v. Smith*, 275 F. App'x 184, 186 (4th Cir. 2008) (sentence significantly below the guidelines range was not an abuse of discretion where defendant had "lived an exemplary life to this point . . . full of noteworthy activities") (internal quotation marks omitted).

## **SECTION 3553(a) FACTORS**

As this Court is aware, sentencing courts must take into account the statutory sentencing factors set forth in 18 U.S.C. § 3553(a) by imposing a sentence sufficient, but not greater than necessary, to comply with the purposes set forth therein, that is,

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

Section 3553(a) directs courts to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory sentencing purposes reflected above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

Nature and Circumstances of the Offense and Defendant's History and Characteristics

Bribing a county official to obtain an appointment as an auxiliary deputy sheriff is a serious offense. This type of conduct interferes with personnel decisions based on merit and, more broadly, the public's right to government free from improper influence. Mr. Metcalf fully appreciates this.

Mr. Metcalf has otherwise led an exemplary life, both professionally and personally. He has built successful small businesses and devoted countless hours of his own time in service to

5

the community as a law enforcement officer. He has raised, along with his wife, four successful children and, more recently, has found new fulfillment and joy as a grandfather.[2]

Mr. Metcalf has no criminal history. Apart from the aberrant conduct at issue in this case, he has led a law-abiding life. He has led a productive life.

Mr. Metcalf is, first and foremost, committed to his family. In countless ways, he is the center of large family that spans four generations. His wife of 38 years, Monika, describes him a "wonderful and devoted husband;" father of four successful, self-sufficient adult children who "rely on his friendship and advice;" and grandfather of six grandchildren who adore him. Ex. 2 (letter from Monika Metcalf). To his daughter Hayley, he is a "girl-dad" with a "family-first mentality" who taught her and her siblings to work hard, be kind, give back to the community, show up for family, and, above all else, love one another. Ex. 3 (letter from Hayley Metcalf). His sister Tanya notes Mr. Metcalf's sacrifices to support the needs of his family, highlighting an instance when he was the first person to join his nephew—her son—in the hospital following an unexpected incident. Ex. 4 (letter from Tanya Salewski).

Among the most significant ways Mr. Metcalf has demonstrated a commitment to his family is through his role as a volunteer coach for his daughters' club softball teams. During the time they were growing up, he spent countless hours coaching their teams, frequently traveling to games in other parts of the country. He coached and influenced the lives of not just his own children, however, but also, as daughter Hayley notes, "hundreds of other girls, giving guidance and mentorship" and "help[ing] create a community of girls, who ultimately became women who believed in themselves." Ex. 3. According to friend and fellow coach Mark Ehler, Mr. Metcalf

---

[2] A testament to his varied skills and interests and his commitment to bringing joy to the youngest members of the community, Mr. Metcalf has also authored a children's book titled *I Baked My Bowtie* (https://www.ibakedmybowtie.com).

"has made a very positive impact on the lives of many girls" who, because of his efforts as a coach and mentor, "became . . . most certainly stronger and more capable girls and then young women." Ex. 5 (letter from Mark Ehler). Although he no longer coaches, Mr. Metcalf still serves on the softball club's board, regularly counsels coaches, and offers free instruction in specific softball skills. Id.

Mr. Metcalf's commitment to his community extends beyond the many girls he has coached and mentored over the years. He is a fixture of the neighborhood where he and his wife raised their family and have lived for 37 years. He is known as the person who helps others with tasks like bringing in neighbors' trash cans and emergencies like containing a neighbor's fence fire, hosts neighborhood Halloween parties, opens his backyard pool and sport court to neighborhood children, volunteers at school fundraisers and career days, and generally provides support during times of need. Ex. 6 (letter from Bradley Jones), Ex. 7 (letter from Tim Mahoney), Ex. 8 (letter from German Pareja).

But perhaps Mr. Metcalf's greatest contribution to the larger community is reflected in his lengthy service as an unpaid law enforcement officer. From 1993 through approximately 2017, he served in a range of roles in several Northern Virginia jurisdictions. Although unpaid, Mr. Metcalf received extensive training and faced many of the same risks as full-time officers. Ex. 9 (letter from Colin Ruffner). His responsibilities included working as a motorcycle officer, operating patrol and rescue watercraft, serving as a helicopter-based tactical flight officer, handling shifts in patrol cars, monitoring vehicle speeds, making arrests, and regularly testifying in court. Along the way, he received multiple service awards and citations, including a recognition from former governor Jim Gilmore for his role in securing the perimeter of the Pentagon following the September 11, 2001 terrorist attack when he manned his post for several

days without a break until relieved. Ex. 1. As Mr. Metcalf's father notes, "This particular type of service assumes enormous risk and a willingness to serve, no matter the cost, no matter the risk." Ex. 10 (letter from James Metcalf, Sr.).

Statutory Purposes of Sentencing

Bribing a county sheriff in exchange for a position as an auxiliary deputy is a serious offense. A term of probation reflects the severity of the crime. For an individual like Mr. Metcalf, that is, a first-time offender who recognizes what he did was wrong, who has taken responsibility for his actions, who has otherwise led an honorable life, and who intends to make the most of the rest of his life, a sentence of probation sentence will promote respect for the law and provide just punishment.

A sentence of probation will also afford adequate deterrence, both general and specific. A federal felony conviction that remains on a defendant's record forever and that presents potential obstacles to employment, including unpaid employment, and other opportunities is a significant deterrent to individuals situated similarly to Mr. Metcalf who might consider paying a public official to perform an official act. With regard to specific deterrence, there is no need to protect the public from further crimes committed by Mr. Metcalf as the record strongly suggests he will never engage in this type of conduct in the future. It goes without saying that he has learned his lesson and learned it well.

Kinds of Sentences Available

Because 18 U.S.C. § 666(a)(1) does not include a statutory minimum, this Court may impose a sentence of probation.

Kinds of Sentences and Sentencing Range Set Forth in the Guidelines

As noted above, the adjusted offense level should be 13, with a corresponding advisory range of 12 to 18 months in prison. Given that the sentencing guidelines are advisory, *United States v. Booker*, 543 U.S. 220 (2005), however, the Court is free to craft a sentence outside that range. In carrying out its obligation to "make an individualized assessment based on the facts presented," a sentencing court may deviate from the guidelines based on policy considerations or because the guidelines fail to reflect the § 3553(a) factors. *United States v. Mondragon-Santiago*, 564 F.3d 357, 360 (5th Cir. 2009). In addition, a sentence of probation is permissible—and, in light of the government's sealed filing, appropriate.

Sentencing Guidelines Policy Statements

The guidelines policy statements refer to the need for just punishment. The introductory chapter, for example, outlines the basic purposes of criminal punishment that supported the guidelines' creation. Included among those purposes is just punishment. U.S.S.G., Ch. 1, Part A (Introduction and Authority). Mr. Metcalf respectfully submits that the totality of circumstances in this case suggest that a sentence of probation would be just punishment.

Avoidance of Unwarranted Sentencing Disparities

As noted in the PSR, during the last five fiscal years (2019-2023), after excluding defendants who received a § 5K1.1 substantial assistance departure, there were 64 defendants whose primary guideline was § 2C1.1 with a total offense level of 13 and a criminal history category of I. For the 40 defendants (63%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was five months.[3] Taking the government's sealed filing into account, a sentence of probation is consistent with the goal of avoiding

---

[3] The source of these statistics is the U.S. Sentencing Commission's JSIN database (https://jsin.ussc.gov/analytics/saw.dll?Dashboard).

9

unwarranted sentencing disparities for defendants convicted of similar bribery offenses and with the same criminal history category.

<u>Need to Provide Restitution to Victims of the Offense</u>

As noted in the PSR, restitution is not applicable in this case. PSR ¶ 68.

## **CONCLUSION**

Mr. Metcalf recognizes he broke the law. He is remorseful and wants to make amends for what he did. He has accepted responsibility for his conduct and has worked with the government by participating in several extensive meetings and testifying at trial. He is a man of strong character who wants to enjoy his family and continue to contribute to his community. For the reasons set forth above, those discussed in Mr. Metcalf's sealed filing, and those to be presented at the sentencing hearing, Mr. Metcalf respectfully asks the Court to impose a sentence of probation.

Respectfully submitted,

By:     /s/
Timothy D. Belevetz (VSB No. 36110)
Ice Miller LLP
200 Massachusetts Avenue, N.W., Suite 400
Washington, DC  20001
Tel:  (202) 572-1605
timothy.belevetz@icemiller.com

*Counsel for Defendant James Metcalf*

## **CERTIFICATE OF SERVICE**

      I certify that on this 14th day of March 2025, I caused the foregoing to be filed electronically using the Court's CM/ECF system, which sends a notification of such filing to:

Melanie Smith
Assistant U.S. Attorney
U.S. Attorney's Office
225 West Main Street, Suite 130
Charlottesville, VA  22902
Tel:  (703) 299-3700
melanie.smith@usdoj.gov

Celia Choy
Lina Peng
Trial Attorneys
U.S. Department of Justice
Criminal Division, Public Integrity Section
1301 New York Avenue, N.W., 10th Floor
Washington, DC  20530
Tel:  (202) 514-1412
celia.choy@usdoj.gov
lina.peng@usdoj.gov

*Counsel for the United States*

                                              /s/
                                    Timothy D. Belevetz
                                    Ice Miller LLP
                                    200 Massachusetts Avenue, N.W., Suite 400
                                    Washington, DC  20001
                                    Tel:  (202) 572-1605
                                    timothy.belevetz@icemiller.com